## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF ALASKA

In re:

RENEE M BERNI,

        Debtor.

Case No. K12-00404-GS
Chapter 7

### MEMORANDUM ON REAFFIRMATION AGREEMENTS

The debtor has filed three *Reaffirmation Agreements (Agreements)* with Credit Union 1.[1] Because the *Agreements* did not contain a certification from counsel, they were treated as a *pro se* filings, and were set for hearing on January 7, 2013.[2] Both the debtor and her attorney, Dawn Austin, appeared telephonically for the hearing. Brian Welsh, representative for creditor Credit Union 1, also attended the hearing.

The three obligations are cross-collateralized against the debtor's 2005 Ford Escape.[3] The first debt is the vehicle loan, with a balance of $8,032.84, payable at $207 per month, accruing interest at 8.75%, and there are 47 months remaining. The debtor also has a signature loan with Credit Union 1, with a stated balance of $4,789.70, on which she pays $300 per month. The signature loan accrues interest at 14.95% and has 18 months

---

[1] The debtor filed her pro se *Reaffirmation Agreements* on October 30, 2012 at Docket Nos. 20-22.

[2] 11 U.S.C. § 524(d); *Bay Fed. Credit Union v. Ong (In re Ong)*, 461 B.R. 559, 562 (B.A.P. 9th Cir. 2011).

[3] The debtor has not disputed Credit Union 1's assertion that the three debts are cross-collateralized. For purposes of the reaffirmations, the court will assume that the 2005 Ford Escape secures all three debts.

remaining. Finally, the debtor has a credit card with a balance of $1,000, accruing interest at 11.95%, on which she is required to pay $15 or 2.5% of the balance per month.

There is some dispute regarding the value of the 2005 Ford Escape. According to the *Agreements,* the fair market value of the vehicle is $8,850.[4] But, the debtor has previously valued the vehicle at $13,000 in her schedules.[5] During the hearing, the debtor informed the court that she had paid $9,500 for the 2005 Ford Escape roughly a year ago. Considering that the vehicle has depreciated since the debtor purchased the vehicle for this sum, the court finds that the vehicle has a current fair market value of $8,850.

Under § 524(c)(6)(A) of the Bankruptcy Code, a court may approve a reaffirmation agreement involving an unrepresented debtor only if it finds that the reaffirmed debt will not present an undue hardship and is in the best interests of the debtor.[6] Section 524(m)(1) provides that undue hardship is presumed if the debtor's monthly expenses exceed her monthly income.[7] The presumption would not apply in this instance because the creditor is a credit union.[8] Further, the presumption would not arise here in any event, because the debtor's monthly income exceeds her monthly expenses by $78, even taking into account

---

[4] *Reaffirmation Agreement*, Docket No. 20 at 1.

[5] *Schedule B*, Docket No. 13 at 6. No information was provided by the debtor regarding the condition of the vehicle, or the mileage.

[6] 11 U.S.C. § 524(c)(6)(A).

[7] 11 U.S.C. § 524(m)(1).

[8] 11 U.S.C. § 524(m)(2).

2

recent financial changes.[9] The debtor believes that she can make each of the payments on the three obligations, and the parties agree that she is current on each debt. The debts to be reaffirmed do not impose an undue hardship on the debtor.

Even absent undue hardship, the court must determine whether reaffirmation is in the best interests of the debtor.[10] Examination of the debtor's best interests is broader than the undue hardship inquiry, and allows the court flexibility to consider "the particular circumstances of the case in reaching a decision as to whether a reaffirmation agreement should be approved."[11] Here, the cross-collateralization of the three debts against a depreciating asset weighs heavily against reaffirmation. It would be one thing if the debtor were to reaffirm only the $8,032.84 vehicle loan. The monthly payments are reasonable, and there would be a small amount of equity in the vehicle to protect the debtor. It is much different, however, where a vehicle valued at $8,850 secures debts totaling $13,822.54.

Cross-collateralization effectively consolidates the three obligations into a single debt for reaffirmation purposes because the debtor may not choose to reaffirm the vehicle loan while ignoring the signature loan and credit card debt.[12] Absent the creditor's consent, if the

---

[9] Docket Nos. 20-22. It appears that the debtor may have double counted her monthly obligation on the vehicle loan. If so, her monthly balance net of expenses would be $285, rather than $78 as stated on the *Agreements*.

[10] Section 524(c)(6)(B) excepts consumer debt secured by residential real property from the best interest requirements. That exception does not apply to Ms. Berni's debts.

[11] *In re Law*, 421 B.R. 735, 737 (Bankr. W.D. Pa. 2010).

[12] *In re DeSantis*, 395 B.R. 162, 165 n.4 (Bankr. M.D. Fla. 2008)(debtor could not selectively reaffirm parts of cross-collateralized debts); *In re Casenove*, 306 B.R. 367, 371 (Bankr. M.D. Fla. 2004); *Matter of Brady,* 171 B.R. 635, 639-40 (Bankr. N.D. Ind. 1994)(no partial reaffirmation of secured debts); *In re Briggs,* 143 B.R. 438, 460 (Bankr. E.D. Mich. 1992).

3

debtor wants to reaffirm the vehicle loan, she must also reaffirm the signature loan and credit card debts as well.  In this instance, the debtor would be assuming $13,822.54 in continuing personal liability to keep a vehicle worth $8,850.  Courts have traditionally found that reaffirmation of unsecured, or undersecured, debt is not in the debtor's interest.[13]  Where the only benefit of reaffirmation is the debtor's continued personal liability, "[i]t is difficult to see how that is beneficial to the Debtor."[14]

The debtor has executed and filed the *Reaffirmation Agreements,* and done all that she could to reaffirm her three debts with Credit Union 1.  Although the presumption of undue hardship is not an issue here, these *Agreements* will not be approved because the court has concluded that reaffirmation is not in the debtor's best interests.  As the court noted at the reaffirmation hearing, the Bankruptcy Code expressly states that nothing prevents her voluntary repayment of the Credit Union 1 debts.[15]  Further, the debtor may be protected by the doctrine of the back door ride through, which would allow her to retain the 2005 Ford Escape, despite disapproval of her *Reaffirmation Agreements*, so long as she continues to

---

[13] *In re Cooper*, 2012 WL 566070 (Bankr. D. Kan. Feb. 21, 2012)(reaffirmation of vehicle was not in debtor's best interest given depreciating nature of collateral and very little, if any, equity in asset); *In re Caldwell*, 464 B.R. 694 (Bankr. W.D. Pa. 2012)(reaffirmation of real property not in debtor's best interest where debtor did not live on property and had no equity in property); 4 *Collier on Bankruptcy* ¶ 524.04[2] at 524-48 (Resnick & Sommers eds., 16th ed.)("Some courts refuse to permit reaffirmation of a secured debt in an amount in excess of the value of the collateral.").

[14] *Law*, 421 B.R. at 738.

[15] *See* 11 U.S.C. § 524(f).

make timely payments on these obligations and maintain insurance on the vehicle.[16]  For these reasons, the court will disapprove the *Reaffirmation Agreements*.  An order will be entered consistent with this memorandum.

DATED:  January 14, 2013.

> BY THE COURT
>
> /s/ Gary Spraker
> GARY SPRAKER
> United States Bankruptcy Judge

Serve:  D. Austin, Esq.
W. English, Esq.
R. Berni, Debtor
Brian Welch, Credit Union One, 1991 Abbott Road, Anchorage, AK  99507
L. Compton, Trustee
U. S. Trustee

---

[16] As explained by Judge Ross in *In re Nelson,* 2008 WL 8652595 (Bankr. D. Alaska Sept. 12, 2008), and a number of other courts, where a debtor seeks to reaffirm her secured debts, only to have the court disapprove reaffirmation, the debtor is permitted to retain the collateral so long as she keeps her payments current, and performs other contractual obligations such as insuring the property. *See Coastal Federal Credit Union v Hardiman*, 398 B.R. 161, 181-88 (E.D.N.C. 2008);  *In re Schmidt*, 397 B.R. 481, 485-86 (Bankr D. Md. 2008) [dicta]; *In re Chim*, 381 B.R. 191, 198-99 (Bankr D. Md. 2008);  *In re Moustafi*, 371 BR 434 (Bankr. D. Ariz. 2007);  *In re Husain*, 364 B.R. 211, 218-19 (Bankr. E.D. Va. 2007); *In re Blakeley*, 363 B.R. 225, 231 (Bankr D. Vt. 2007);  *In re Wilson,* 2012 WL 2411918 (Bankr. N.D. West Va. Jun. 26, 2012);  *In re Reed,* 2011 WL 6328677 (Bankr. E.D. Mich. Dec. 14, 2011);  *In re Bower*, 2007 WL 2163472 (Bankr. D. Or. Jul. 26, 2007).  The Ninth Circuit has not directly addressed the back door ride through doctrine, although it acknowledged the issue in *Dumont v. Ford Motor Credit Corp. (In re Dumont)*, 581 F3d 1104, 1112 n.14 (9th Cir. 2009).  In *Dumont*, the debtor never signed nor sought approval of a reaffirmation agreement.  *Id*. The Ninth Circuit distinguished Dumont's situation from cases upholding the back door ride through, because in "each of these cases, the debtor submitted a reaffirmation agreement to the bankruptcy court, which rejected the agreement as not in compliance with 11 U.S.C. § 524(c) for reasons beyond the debtor's control."  *Id*.  As was also the case in *Nelson,* this issue was not directly before the court, and, therefore, is not a holding since neither party has briefed the matter.  *Nelson,* 2008 WL 8652595 at 1.